# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | } | |
| PANAYIOTIS DIAMANTIS | } | CASE NO. 00-80241-JAC-11 |
| SSN:   XXX-XX-3437 | } | |
| | } | CHAPTER 11 |
| Debtor(s). | } | |
| | | |
| MICHALIS DIAMANTIS | } | AP NO. 06-70046-JAC |
| Plaintiff(s), | } | |
| v. | } | |
| | } | |
| PERFECT HOME, LLC | } | |
| Defendant(s). | } | |
| | } | |
| v. | } | |
| | } | |
| PURITAN LACE MFG. CO., INC. | } | |
| Third-Party Defendant | } | |

## MEMORANDUM OPINION

This adversary proceeding is before the Court on cross-motions for summary judgment filed on plaintiff's complaint for declaratory judgment.  Plaintiff seeks an order determining the amount of the debt owed plaintiff, Michalis Diamantis,  and the amount owed third-party defendant, Puritan Lace Mfg., from the liquidated assets of Perfect Home, LLC.

Pursuant to the confirmation order entered in the case of Panayiotis Diamantis, the plan trustee acting as manager of Perfect Home liquidated the assets of Perfect Home on January 22, 2007, paid all administrative and secured claims of Perfect Home as of said date and distributed the remaining funds pro rata between Puritan and Michalis Diamantis.  Perfect Home paid Puritan $421,000.00 and Michalis Diamantis $382,299.00.  Michalis Diamantis alleges that the trustee over paid Puritan's claim and shorted his claim by the amount over paid Puritan.

For the reasons that follow below, the Court finds that Puritan is not entitled to interest on its claim at the Alabama statutory rate of 12%.  Puritan's claim is due to be paid interest at the rate of 6% on the $150,000.00 payment that became due post-confirmation when Puritan's state court judgment became final and non-appealable.  The balance of Puritan's claim is not in default under the terms of the Perfect Home's confirmation order which provided for the balance of Puritan's

claim to be paid "over 120 months." Interest will not accrue on the balance of Puritan's claim until the expiration of 10 years pursuant to the terms of Perfect Home's confirmed plan.

### Findings of Fact

The claim of Michalis Diamantis arises from Diamantis' post-confirmation payment of the indebtedness owed by Perfect Home to the National Bank of Greece under the terms of Perfect Home's confirmed plan. On October 5, 1999, this Court entered an order confirming the Chapter 11 plan of Perfect Home, LLC which provided for the payment of a percentage of the debt due the National Bank of Greece as an unsecured creditor "within 60 months from the Effective Date of the Plan in consecutive monthly installments, without interest." Post-confirmation, Perfect Home made payments to the Bank of Greece until May of 2001. Subsequently, Perfect Home defaulted on its remaining repayment obligations to the Bank of Greece leaving a balance owed of $390,184.67.

In February of 2002, the Bank of Greece collected $556,048.45 from Michalis Diamantis as a third-party guarantor of the Perfect Home debt. Michalis Diamantis then made demand upon Perfect Home for payment of the full amount charged to the funds of Michalis Diamantis by the Bank of Greece. In addition to his subrogation rights for the payment made to the Bank of Greece, Michalis Diamantis contends that post-confirmation Perfect Home ratified the entire amount of the debt that Diamantis paid the Bank of Greece.[1]

Perfect Home's confirmation order further provided that Perfect Home had elected to treat the claim of Puritan Lace Mfg. Co., Inc. under Option II of the debtor's second amended Chapter 11 plan pursuant to which the debtor assumed the entry of a final non-appealable judgment in the total amount of $2,202,780.00 with $452,780.00 of said amount being treated as compensatory damages. Because Puritan's claim remained contingent and unliquidated at confirmation, Perfect Home developed several options for addressing the claim upon the entry of a final and non-appealable judgment in the underlying state court action. According to the formula set forth in Option II, the debtor agreed upon the entry of a final, non-appeal judgment to pay, settle and satisfy the compensatory claim of Puritan for the sum of $421,085.40 to be satisfied by paying the claim according to the following schedule:

> a) $00.00 - verdict in favor of Debtor-then this claim shall not receive any distribution;
> b) $150,000.00 or less to be paid within 30 days of the entry of a final non-appealable judgment;
> c) $150,000 to $377,9460 to be paid: $150,000 within 30 days of the entry of a final non-appealable judgment and the balance to be paid over 60 months;

---

[1] The Court will not address Diamantis' ratification claims in this order on partial summary judgment. The parties have been instructed to file briefs on same.

**d) Compensatory damages over $377,940.60 to be paid: $150,000 within 30 days of the entry of a final non-appealable judgment and the balance to be paid over 120 months**;

e) Any portion of a punitive damage claim shall be paid, settled and satisfied through the payment of $100.00 dollars.

(emphasis added)

On July 31, 2001, the Alabama Supreme Court affirmed the state court judgment and no further appeal was taken. Pursuant to the terms of the confirmation order, Perfect Home was required to pay Puritan $150,000.00 within 30 days of the entry of the final, non-appealable judgment, but Perfect Home failed to make the payment when same became due.

## Conclusions of Law

The balance of Puritan's claim over and above the $150,000.00 payment that became due upon the entry of the final, non-appealable judgment is not in default according to the terms of Perfect Home's confirmation order. The confirmation order provided that the balance of Puritan's claim would be paid "over 120 months," but the order did not specify the frequency with which payments were to be made.

The confirmation order was very specific as to how other creditors were to be paid. With respect to secured claims, the debtor's plan of reorganization as modified by the second amendment to the debtor's Chapter 11 plan, dated March 30, 1999, provided that the claim of AmSouth would be paid in "monthly installments of $2,000 dollars per month for a period of 36 months . . . ." The order further provided that the payments were due on the first and late by the fifth day of each month. Next, with respect to the secured claim of Regions the plan required the debtor to pay Regions' claim "in consecutive quarterly installments . . . and continuing each quarter" for a period of twenty quarters. As to non-priority unsecured claims, except as otherwise provided for in the plan, the plan required the debtor to pay such claim holders a percentage of the claims "within 60 months from the Effective Date of the Plan in consecutive monthly installments, without interest." The confirmation order clearly provided for payments to secured creditors with either monthly installments or quarterly installment payments and for unsecured creditors with consecutive monthly installment payments.

Unlike secured claims and other unsecured claim holders, the confirmation order provided that the balance of Puritan's claim above $150,000.00 would be paid "over 120 months." The order does not call for monthly installment payments or provide any other means for determining how the balance is to be paid over the 120 month period. As can be seen in the confirmation order, distributions can be calculated in a number of ways including consecutive monthly payments, quarterly, or even with the balance being due at the end of the specified time period. Here the confirmation order specified the time period over which the balance of Puritan's claim was to be paid, but failed to specify how frequently payments were to be made during that time period.

Accordingly, the Court cannot find that the balance due over $150,000.00 is in default until the 120 month time period expires.

Perfect Home argues that Puritan is now entitled to the statutory judgment rate of interest at 12% per annum on its entire claim. The Court first notes that it would have been mathematically impossible for Perfect Home to have paid Puritan's claim with interest at 12% compounded over 10 years. Perfect Home only had estimated net equity available for liquidation to unsecured creditors in the approximate amount of $1,054,162.22 to be divided between Puritan's contingent unliquidated claim of $421,085.40 and the unsecured claim of the Bank of Greece which the plan proposed to pay $532,069.95 within 60 months in consecutive monthly installments, without interest. If Puritan had received judgment rate interest compounded over 10 years, the payments would have taken more than what was available in the estate. To pay Puritan's claim with 12% interest compounded annually over 10 years, payments on Puritan's claim would total $724,962.00. When combined with the indebtedness due the Bank of Greece of $532,069.95, payments on the two claims would total $1,257,031.95 which exceeds the estimated net equity available for liquidation.

Perfect Home points to language contained in payment Option I of the confirmed plan under which the debtor estimated the claim of Puritan to be $272,000.00 and proposed to pay same with interest at the statutory rate of 12 percent, in consecutive quarterly installments of $13,600.00 for a period of five years following the entry of a final, non-appealable judgment as evidence that the parties intended for Puritan to receive the 12% statutory rate of interest upon default. The fact that the debtor choose not to select the payment plan under Option I is further evidence, however, that the parties did not intend for the statutory rate of interest to apply. Had the parties intended for the statutory rate of interest to apply in Option II they were certainly capable of having specified same.

The parties are bound by the terms of the confirmed plan. A confirmation order gives rise to a contract, the confirmed plan, between the debtor and its creditors. Post-confirmation, the confirmed plan controls the parties rights and obligations.[2] Counsel for trustee argues in this case that the Court should consider the Chapter 11 requirements under 11 U.S.C. § 1129(a) for confirmation such as fairness and good faith. Section 1129 sets out sixteen requirements that must be complied with before the Court may confirm a plan. This Court cannot now revisit those issues more than eight years after the confirmation order was entered in this case in October of 1999. In the case of *Finova Capital Corp., v. Larson Pharmacy Inc. (In re Optical Techs., Inc.)*, 425 F.3d 1294 (11th Cir. 2005), the Eleventh Circuit recognized the binding effect of a confirmation order even where the bankruptcy court erred in exercising jurisdiction over a plan that bound non-debtor lessors and lessees to new contractual terms.[3] The bankruptcy court held that: (1) the confirmation order could not have modified certain leases that expired pre-petition, and (2) the court lacked jurisdiction

---

[2] See Randy P. Orlik, Conversion After Chapter 11 Plan Confirmation, What is it Good For?– Absolutely Nothing!, 23 Cal.Bankr.J. 91, 93 (1996).

[3] *Finova Capital Corp., v. Larson Pharmacy Inc. (In re Optical Techs., Inc.)*, 425 F.3d 1294 (11th Cir. 2005).

to enforce the lease modifications of other non-expired leases that were exclusively between non-debtor parties. The district court reversed finding that the confirmation order was res judicata and refused to void the order. On appeal, the Eleventh Circuit determined that the confirmed plan was binding and the lessees were barred from collaterally attacking the bankruptcy court's jurisdiction. Any error by the bankruptcy court, as part of the Chapter 11 plan confirmation process, in exercising jurisdiction to confirm a plan that provided for the modification of leases that the debtor, as lessor, had previously assigned to another party did not render the plan confirmation order void or permit collateral attack thereon by lessees that had been scheduled as creditors of the debtor and served with copies of the plan and disclosure statement. Regardless of whether the bankruptcy court had jurisdiction as part of the plan confirmation process to modify the lessees' rights under leases assigned to a non-debtor, the lessees were bound by the terms of the confirmed plan and confirmation order. The Eleventh Circuit noted that the terms of the plan were plain and any objection to same could have been raised at confirmation.

In this case, Puritan filed an objection to confirmation but prior to the hearing either withdrew or settled its objection and agreed to the terms of the confirmed plan now before the Court. Reviewing the terms of the confirmed plan to which the parties are bound, the Court finds that the confirmation order clearly sets forth how Puritan's compromised claim is to be paid. Puritan was to be paid $150,000 within 30 days of the entry of a final non-appeal judgment and the balance of Puritan's claim was to be paid over 120 months. There is no mention of interest under Option II. Consequently no interest is accruing on the balance because none was provided for under the terms of the confirmed plan.

The Court further notes that the second amended plan expressly provided for the discharge of all pre-petition indebtedness *in exchange for* the rights afforded in the plan. The plan provided that such rights "shall be in exchange for and in complete satisfaction, discharge and release of all Claims and interests of any nature whatsoever." The plan further provided that "all creditors shall be precluded from asserting against the Debtor or their assets or properties any claim which arises from or relates to any act, omission or transaction of any kind that occurred prior to the confirmation date." Accordingly, the Court finds that Perfect Home is precluded from asserting any right to judgment rate interest based on the judgment even though same did not become final and non-appealable for some time after the confirmation order.

Puritan agreed to compromise its prepetition judgment in exchange for the rights afforded Puritan in the plan and Puritan is now bound by the terms of the second amended plan and confirmation order. Puritan is precluded from asserting against the debtor any claim which arose from or relates to any act, omission or transaction of any kind that occurred prior to the confirmation date and is, therefore, not entitled to seek interest on its claim at the statutory judgment rate of interest. Upon default of the initial payment due, Puritan became entitled to the default rate of pre-judgment interest at 6% on its claim for $150,000.00 with the balance of Puritan's claim to be paid over 120 months without interest under the terms of the plan.

Based upon the foregoing, it is ORDERED, ADJUDGED AND DECREED that partial summary judgment is entered in favor of the Michalis Diamantis, plaintiff, and against the

defendants as set forth above. The Court will reserve ruling on the issue raised by Michalis Diamantis regarding ratification. Using these instructions, the parties are ordered to calculate the respective amounts due Puritan and Michalis Diamantis.

A separate order will be entered consistent with this opinion.

Dated: October 5, 2007


/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge

JAC/mhb
xc:     Debtor(s)
        Robert C. Gammons, attorney for plaintiff(s)
        Jerry Knight, attorney for Puritan Lace Mfg. Co.
        Jackson Duncan, attorney for Perfect Home, LLC.