# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| In the Matter of: } | |
| PANAYIOTIS DIAMANTIS } | CASE NO. 00-80241-JAC-11 |
| SSN:   XXX-XX-3437 } | |
| } | CHAPTER  11 |
| Debtor(s). } | |
| } | |
| MICHALIS DIAMANTIS, } | AP NO. 06-70046-JAC-11 |
| } | |
| Plaintiff(s), } | |
| v. } | |
| } | |
| PERFECT HOME LLC } | |
| } | |
| Defendant(s). } | |
| } | |
| PURITAN LACE MFG CO., INC. } | |
| } | |
| Third-Party Defendant } | |

## MEMORANDUM OPINION

This case is before the Court on plaintiff's adversary proceeding asking the Court to determine the amount owed him by defendant, Perfect Home, LLC.  Also before the Court is Perfect Home's third-party complaint against Puritan Lace Mfg. Co., Inc., a creditor in Perfect Home's Chapter 11 case, asking this Court to order Puritan Lace to pay the additional funds owed, if any, by Perfect Home to plaintiff, Michalis Diamantis.

I.     Factual Background

On November 30, 1998, Perfect Home filed bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Alabama, Northern

Division. Perfect Home was in the business of finishing textile lace products. On October 5, 1999, this Court confirmed Perfect Home's plan of reorganization and the case was subsequently closed on January 5, 2000. Post-confirmation, Perfect Home continued operating for a period of time, and was managed by the plaintiff's son, Panayiotis Diamantis.

Perfect Home's plan of reorganization provided for the payment of various secured and unsecured creditors, including the unsecured claims of the National Bank of Greece and Puritan Lace. Perfect Home's obligation to the Bank of Greece was guaranteed by the plaintiff. Post-confirmation, Perfect Home defaulted on its repayment obligation to the bank and the bank made demand upon Diamantis.

Puritan Lace and Michalis Diamantis are now Perfect Home's only remaining creditors. Perfect Home's plan required the debtor to pay the Bank of Greece 93% of its unsecured claim, or $532,069.95, over sixty months payable in "consecutive monthly installments, without interest." Post-confirmation, Perfect Home made the installment payments due the Bank of Greece, paying same until May of 2001, leaving a balance owed under the confirmation order of $390,184.67.

On February 22, 2002, the bank collected $556,048.45, the amount owed under the terms of the confirmation order plus the balance of the discharged portion of its debt, from Michalis Diamantis as a third-party guarantor of the Perfect Home debt. At that point, Diamantis became subrogated to the bank's rights under Perfect Home's plan.

Perfect Home's plan also provided for payment of Puritan Lace's contingent and unliquidated claim. Puritan Lace was one of debtor's principal suppliers of raw lace products. A dispute arose between the two and other parties which resulted in extended litigation. At confirmation, the litigation was still pending. Prior to confirmation, Puritan either withdrew or settled its objection

to Perfect Home's plan which required the debtor to make a $150,000 payment to Puritan Lace within 30 days after the entry of a final non-appealable judgment in the parties' pending state court action. The plan provided further that Perfect Home would pay the balance of Puritan's claim up to $421,085.40 "over 120 months."

On July 31, 2001, post-confirmation, the Alabama Supreme Court entered an order in the state court action affirming the state court judgment entered in favor of Puritan Lace. Under the terms of its confirmation order, Perfect Home was required to pay Puritan the initial installment payment of $150,000 within 30 days after the entry of the judgment, but Perfect Home failed to make the payment when same became due.

On January 21, 2000, Panayiotis Diamantis, the plaintiff's son, filed a Chapter 11 bankruptcy petition in this Court which was subsequently transferred to the Northern District of Alabama, Western Division. At the time the debtor filed for relief, he possessed a 75% ownership interest in Perfect Home. Under the terms of the Panayiotis Diamantis' confirmed Chapter 11 plan of liquidation, dated February 10, 2003, the plan trustee, Robert Reynolds, Esq., was charged with the disposition of the debtor's assets, including his interest in Perfect Home. Panayiotis Diamantis continued to manage Perfect Home until said date.

Prior to that date, in October of 2002, Michalis Diamantis asserts that, through his attorney, he made demand upon Perfect Home for payment in the sum of $556,048.45, the full amount charged by the bank pursuant to the guaranty agreement. Michalis Diamantis asserts that his son, acting as manager of Perfect Home, ratified the full amount demanded in order to negotiate an extension of payment terms for the debt. Diamantis argues that by his conduct in not filing suit or pursuing further collection against Perfect Home, he agreed to forebear and this forbearance was

3

valid and lawful consideration sufficient to support the promise of Perfect Home to pay the full sum demanded by Diamantis.

Panayiotis Diamantis acknowledges that as the manager of Perfect Home in October of 2002, he instructed Lisa Overman, an employee who was acting as the Chief Financial Officer for Perfect Home to respond to his father's demand letter and acknowledge the full amount of the debt due as claimed in the sum of $556,048.45. Panayiotis Diamantis asserts that he instructed Overman to negotiate a new repayment schedule for payment of the debt. On October 14, 2002, Overman sent a letter to counsel for Michalis Diamantis on behalf of Perfect Home in which Overman indicated that Perfect Home would contact counsel for Michalis Diamantis to work out a payment schedule. Perfect Home and Michalis Diamantis never actually reached an agreement regarding a new payment schedule before Panayiotis Diamantis was terminated as manager of Perfect Home in February of 2003.

In January of 2007, the plan trustee of the Panayiotis Diamantis' bankruptcy estate liquidated all real and personal property of Perfect Home for a total of $778,299. On or about January 24, 2007, the plan trustee, as acting manager of Perfect Home, disbursed these proceeds by tendering a check to counsel for Puritan Lace in the amount of $421,000 and a check to counsel for Michalis Diamantis in the amount of $367,299.[1]

Michalis Diamantis initially filed the above styled adversary proceeding in his son's bankruptcy case in the Western Division of the Northern District of Alabama, but the Western Division entered an order transferring same to the Northern Division finding that Diamantis' suit

---

[1] See Affidavit of Robert Reynolds, Exhibit A to third-party defendant's motion for summary judgment.

4

asked for a determination of the amount he is owed under the Chapter 11 plan of Perfect Home. Now this Court must decide the correct amount owing to both Michalis Diamantis and Puritan Lace, the only remaining creditors of Perfect Home, pursuant to the terms of Perfect Home's confirmed Chapter 11 plan. Michalis Diamantis disputes the applicability of Perfect Home's plan, however, in resolving the issue of the amount owed to him by Perfect Home. Rather, Diamantis contends that post-discharge Perfect Home ratified the entire debt Diamantis paid the Bank of Greece in the total amount of $556,048.00, and that he is entitled to a pro-rata share of Perfect Home's liquidated assets using this figure.

## II.   Procedural History

On October 5, 2007, this Court entered a memorandum opinion finding on partial summary judgment as follows:

>   1.  Puritan was not entitled to 12% interest under Alabama statute allowing interest on money judgments. ALA. CODE § 8-8-10 (1975).
>
>   2.  Puritan's claim was to be paid as unsecured.
>
>   3.  Puritan was entitled to the Alabama statutory rate of 6% interest on its claim after same became due. ALA. CODE § 8-8-1 (1975). Consequently, since $150,000 of Puritan's claim became due on August 17, 2001 and it was not paid until January 22, 2007, it was entitled to 6% interest on that amount from the time due until the time paid. The balance due Puritan under the plan, $271,085.40, the Court found was not due for a period of 120 months and, thus, not entitled to the Alabama statutory rate of 6%.

The Court specifically reserved ruling on the remaining issue of ratification asserted by Diamantis and instructed the parties to file additional briefs on same. The parties having submitted additional briefs addressing all issues, including the issue of ratification and certain issues decided on partial summary judgment, the Court hereby finds as follows:

5

1.  Michalis Diamantis, as subrogee of the Bank of Greece, can enforce the obligation of Perfect Home only to the extent same could have been enforced by the Bank of Greece.  Michalis Diamantis is owed $390,184.67, together with interest at the rate of 6% from February 22, 2002.

2.  Perfect Home is entitled to $421,085.00 in principal, plus interest.

3.  The Court's order on partial summary judgment, dated October 5, 2007, is due to be amended in part to the extent that the Court found Perfect Home was not required to pay Puritan monthly installment payments over the 120 month period specified in the confirmation order.

### III. What is the correct sum due Michalis Diamantis from Perfect Home's liquidated assets?

On October 5, 1999, this Court entered an order confirming Perfect Home's plan of reorganization.  The Perfect Home plan provided that the rights afforded under the plan "shall be in exchange for and in complete satisfaction, discharge and release of all Claims and interests of any nature whatsoever." Confirmation of Perfect Home's Chapter 11 plan discharged "the debtor from any debt that arose before the date of such confirmation."  11 U.S.C. 1141(d)(1)(A).

Confirmation grants the debtor a discharge that replaces the automatic stay with a permanent injunction pursuant to 11 U.S.C. § 524(a). *See United States v. White (In re White)*. 466 F3d 1241, 1246 (11th Cir. 2006).  Section 524(a) of the Bankruptcy Code prohibits any attempt to hold a debtor liable on a discharged debt.  It provides in part that a discharge in bankruptcy:

> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not the discharge of such debt is waived.

Although § 524(a) prohibits a plaintiff from proceeding against a discharged debtor to recover from the bankruptcy estate, the debt still exists and can be collected pursuant to § 524(e) from any other entity that might be liable to the creditor. See *In re Craig*, 325 B.R. 804, 806 (Bankr. N.D. Iowa 2005). Section 524(e) of the Bankruptcy Code provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."

The Eleventh Circuit has made it clear that "confirmation of a debtor's Chapter 11 plan does not discharge the obligations of a third-party guarantor." See *Sure-Snap Corp.*, 983 F.2d 1015, 1019 (11th Cir. 1993). The liability of a guarantor is not altered by the discharge of a debtor. Accordingly, confirmation of Perfect Home's plan did not alter Michalis Diamantis' liability to the Bank of Greece as a third-party guarantor of the debt.

After Michalis Diamantis paid the Bank of Greece, he became subrogated to the bank's rights against Perfect Home. Under § 509(a) of the Bankruptcy Code, "an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment." Without § 509, if a guarantor paid a claim post-petition, "any claim for contribution, reimbursement or subrogation would be discharged and the guarantor would be left with no means of recovery." See *Prim Capital Corp. v. May (In re May)*, 2006 WL 4458360 (Bankr. N.D. Ohio 2006).

Here, the Bank of Greece held a prepetition claim against Perfect Home. Michalis Diamantis, as guarantor, paid the bank the full amount owed and is now subrogated to the bank's rights under Perfect Home's plan. Section 509(a) subrogates a guarantor who has paid a claim to the rights of the creditor, so that at that juncture, the guarantor steps into the shoes of the creditor as

7

to the balance of the payments owed on the creditor's claim. *See Prim Capital Corp. v. May (In re May)*, 2006 WL 4458360 (Bankr. N.D. Ohio 2006)(noting that § 509 acts as a narrow, equitable backstop to ensure that a co-debtor will receive some of the original creditor's distribution from the debtor's estate if the co-debtor pays the creditor's claim). After the Bank of Greece collected the amount owed under the terms of the confirmation order plus the balance of the discharged portion of its debt from Michalis Diamantis as a third-party guarantor of the Perfect Home debt, Diamantis stepped into the bank's shoes and became entitled to the balance of the payments owed the bank under Perfect Home's plan, or $390,184.67, plus interest.

In October of 2002, when Diamantis made demand upon Perfect Home for payment in the total sum of $556,048.45, the full amount charged by the bank to Michalis Diamantis pursuant to his guaranty agreement, Diamantis violated the discharge injunction under Bankruptcy Code § 524(a) by seeking to collect more than Diamantis was entitled to receive as a subrogee. Under Alabama law, "a subrogee can acquire no greater rights than those possessed by the principal whose rights he asserts." *See Taylor v. Striplin*, 2007 WL 1098544 (Ala. 2007). In *Taylor,* the Alabama Supreme Court recently made it clear that a subrogee merely steps into the shoes of the creditor whose rights he claims, stating:

> A person entitled to subrogation must work through the creditor whose rights he claims. He stands in the shoes of the creditor and is entitled to the benefit of all the remedies of the creditor and may use all means which the creditor could to enforce payment. *But he can only enforce such rights as the creditor could enforce, and must exercise such rights under the same conditions and limitations as were binding on the creditor, and hence, can be subrogated to no greater rights than one in whose place he is substituted.*[2]

---

[2] *Taylor v. Striplin*, 2007 WL 1098544 *3 (Ala. 2007)(quoting *Crutchfield v. Johnson & Latimer*, 243 Ala. 73, 75 (1942)(emphasis in original).

After Diamantis paid the Bank of Greece, he became entitled to all the remedies of the bank and could use all the means which the bank could to enforce payment against Perfect Home. The Bank of Greece was bound by the terms of Perfect Home's plan and was only entitled to remaining payments totaling $390,184.67, plus interest after default. When Diamantis demanded from Perfect Home payment for the full amount that he paid the bank, $556,048.45 (the amount owed under the terms of the confirmation order plus the balance of the discharged portion of the bank's debt) Diamantis violated the discharge injunction under § 524(a).

The Court further finds that Perfect Home's purported ratification of the entire debt was not supported by valid consideration. Diamantis argues that Perfect Home, through its manager, Panayiotis Diamantis, ratified the total amount Michalis Diamantis paid the bank. Diamantis asserts that the repayment promise made by Perfect Home through its manager was supported by valid consideration, namely Diamantis' promise to forbear. The Court finds that the consideration was invalid as same depended entirely on Perfect Home's promise to pay a discharged debt.

In *Rajotte v. Carter (In re Rajotte)* 81 Fed.Appx. 29 (6th Cir. 2003), the Sixth Circuit held that a guarantor was not entitled to seek payment from the debtor for the amount the guarantor paid to satisfy a debt discharged by the debtor's Chapter 7 bankruptcy. The guarantor was only entitled to recover that portion of the debt that was supported by independent post-petition consideration.

Post-discharge, the guarantor entered into a tripartite deal with the debtor and the debtor's ex-wife pursuant to which the guarantor agreed, in part, not to pursue approximately $12,000 on a note secured by the ex-wife's residence and, in exchange, the ex-wife released the debtor from his debt to her for delinquent child support. The $12,000 forbearance inured directly to the debtor's benefit. In exchange, the debtor promised to repay the guarantor the amount the guarantor had been required to

pay on an underlying discharged debt. Eventually, the guarantor sued the debtor in state court seeking to collect under the tripartite agreement and the debtor sought relief from the bankruptcy court to hold the guarantor in contempt of the discharge injunction. The guarantor argued that his funding of the $12,000 child support delinquency by his forbearance on collecting that amount through foreclosure represented new consideration independent of the discharged debt. The Sixth Circuit affirmed the decisions of the bankruptcy and district courts allowing the guarantor to recover against the debtor to the extent the guarantor gave new consideration, where: (1) the new consideration for the child-support payment component of the tripartite agreement did not depend at all on the discharged loan; (2) it was the debtor, not the guarantor, that initiated the new agreement; and (3) even the debtor believed the agreement was a second loan to help him pay his child support debt. By comparison, the consideration given in this case, Diamantis' agreement to forbear, depended entirely upon Perfect Home's agreement to pay a debt discharged by Perfect Home's plan and it was Michalis Diamantis who made the demand upon Perfect Home seeking to collect the discharged debt.

Diamantis further claims that the debt he is owed arises not pursuant to the Perfect Home plan, but, instead pursuant to the provisions of Ala. Code § 8-3-5 which states:

> Payment by a surety or endorser of a debt past due entitles him to proceed immediately against his principal for the sum paid, with interest thereon, and all legal costs to which he may have been subjected by the default of the principal.

Diamantis asserts that this statutory provision authorizes plaintiff to recover the full amount that he paid the Bank of Greece. As noted above, however, the Alabama Supreme Court has made it clear that under the law in Alabama a subrogee "can acquire no greater rights than those possessed by the principal whose rights he asserts." See Taylor v. Striplin, 2007 WL 1098544 *3 (Ala. 2007).

10

When Diamantis paid the Bank of Greece he became entitled to seek repayment of the balance owed the Bank of Greece under the terms of Perfect Home's confirmed plan, $390,184.67, plus interest following Perfect Homes default. See *In re House of Wines, Inc.*, 2007 WL 1455849 (Bankr. D. Dist. Col. 2007)(finding that a guarantor steps into the shoes of the creditor "as to the balance of payments owed on the filed proof of claim").

**IV.    Of the total amount due Puritan Lace, what is the amount in default and what is the applicable rate of interest due Puritan Lace?**

On October 5, 2007, this Court entered an order on partial summary judgment finding that the balance of Puritan's allowed claim over and above the $150,000 payment that became due upon the entry of the final, non-appealable state court judgment was not in default according to the terms of Perfect Home's plan and confirmation order. The confirmation order provided that the balance of Puritan's claim would be paid "over 120 months," but the order did not specify the frequency with which payments were to be made or provide any other means for determining how the balance was to be paid over the 120 month period (monthly, quarterly, annually, etc.). The Court noted that the confirmation order was very specific as to how other creditors were to be paid, and concluded that it could not find that the balance due over $150,000 was in default until the 120 month period expires.

Diamantis argues that Perfect Home's confirmed plan did not require Perfect Home to make regular monthly installment payments to Puritan on the balance due under the plan and, therefore, the only sum presently in default under the confirmed plan is the sum of $150,000.00. According to Diamantis the balance due Puritan under the confirmed plan cannot be considered to be in default until the passage of 10 years.

Perfect Home argues that the balance of Puritan's claim should be paid in monthly installments over the 120 month period. To construe the plan to require no payments to Puritan until the 120 month period expires, Perfect Home argues would discriminate unfairly against Puritan, by requiring it, unlike other members of its class of creditors to wait ten years to obtain any payment on the balance of Puritan's claim over and above the "initial $150,000 installment" and clearly could not have been the reasonable intentions of the parties.

Upon further consideration the Court agrees that the plan should be interpreted as providing for payments to be made to Puritan on a monthly basis. Certainly the plan could have been written more clearly to specify the frequency with which Perfect Home was to make payments to Puritan as the plan clearly provided for payments to secured creditors with either monthly or quarterly installments payments and for unsecured creditors with consecutive monthly installment payments. Nevertheless, the Court finds that the term "over 120 months" should be read to provide for monthly installment payments over the 120 month period to avoid a construction of the plan that would unfairly discriminate against Puritan in contravention of 11 U.S.C. 1129(b)(1) which requires the court to confirm a plan upon finding that "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan." The plan provided that other unsecured creditors would be paid a percentage of their claims "within 60 months from the Effective Date of the Plan in consecutive monthly installment payments, without interest." To interpret the plan so as to require Puritan to wait ten years to obtain any payment on the balance of its claim could not have been the intent of the parties, but most likely was a product of oversight and poor draftsmanship. It was uncontested at oral argument that Perfect Home's plan was drawn by the attorney for Perfect Home. Accordingly, the Court will construe any

12

ambiguity against the drafter of the plan, Perfect Home, and finds that Perfect Home was required to pay Puritan monthly installment payments "over 120 months." There would have been no reason to use the term "120 months" if the parties had intended that no payments would be due until the end of 10 years.

With respect to the applicable rate of interest, the Court finds that Puritan Lace is only due interest measured at the prejudgment rate. Perfect Home's confirmation order provided for the discharge of all pre-petition debt in exchange for the rights afforded under Perfect Home's second amended plan. The plan provided that such rights "shall be in exchange for and in complete satisfaction, discharge and release of all claims and interests of any nature whatsoever." The plan further provided that "all creditors shall be precluded from asserting against the Debtor or their assets or properties any claim which arises from or relates to any act, omission or transaction of any kind that occurred prior to the confirmation date." Although the amount of Puritan's claim was left to be determined in the state court action which remained pending at confirmation, the confirmation order itself represented a new contract between the parties. The confirmation order provided for no interest to Puritan or other unsecured creditors. Upon default under the terms of the confirmed plan, Puritan, like the other unsecured creditors, became entitled to the Alabama statutory rate of interest at 6% under ALA. CODE § 8-8-1 (1975).

**V.   What is the proper pro-rata distribution due to be paid Puritan and Michalis Diamantis?**

Based upon the findings above, the Court concludes that the parties were entitled to the following pro-rata distribution from the liquidated assets of Perfect Home:

**Michalis Diamantis' Claim:**

| | |
|---|---|
| Principal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 390,184.00 |
| Interest @ 6% between 2/22/02 | |
| and 1/22/07 . . . . . . . . . . . . . . . . . . . . . . | $ 115,443.29 |
| Total claim . . . . . . . . . . . . . . . . . . . . . . | $ 505,443.29 |

**Puritan's Claim**

| | |
|---|---|
| Principal  . . . . . . .. . . . . . . . . . . . . . . . . . . . . | $ 421,085.00 |
| Interest @ 6% on $150,000 | |
| and on 64 missed payments | |
| 8/17/01 to 1/22/07 . . . . . . . . . . . . . . . . . | $   72,852.78 |
| Total claim . . . . . . . . . . . . . . . . . . . . . . . | $ 493,937.78 |

**Claims total**
**Diamantis**   $ 505,443.29
**Puritan**      $ 493,937.78
                 $ 999,381.07

**Ratio**
**Diamantis:** 505,443.29/999,381.07 = .5058%
**Puritan**:    493,937.78/999,381.07 = .4942%

**Total Available for Distribution:**   $ 788,299.00

14

**Correct Pro Rata share**:

|  | **Diamantis** | **Puritan** |
|---|---|---|
|  | $ 788,299.00 | $ 788,299.00 |
|  | *     .5058 | *     .4942 |
|  | $ 398,721.63 | $ 389,577.37 |
| Less Amount Paid | $ 367,299.00 | $ 421,000.00 |
| (Over)/Under | $   31,422.63 | $ (31,422.63) |

Judgment is, therefore, due to be entered in favor of Michalis Diamantis in the total sum of $31,422.63.

A separate order will be entered consistent with this opinion.

Dated: December 17, 2007

/s/ Jack Caddell
Jack Caddell
U.S. Bankruptcy Judge

JAC/mhb
xc:   Debtor(s)
      Robert C. Gammons, attorney for plaintiff(s)
      Jerry Knight, attorney for Puritan Lace Mfg. Co.
      Jackson Duncan, attorney for Perfect Home, LLC